IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN CARPENTER,

        Plaintiff,

vs.                                     No. CIV 10-671 WJ/LFG

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

        Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION AND DISMISSING ACTION WITH PREJUDICE

### Introduction

THIS MATTER is before the Court on the Magistrate Judge's Analysis and Recommended Disposition ("recommendations"), filed June 17, 2011 [Doc. 19], proposing denial of Plaintiff John Carpenter's  ("Carpenter") Motion to Reverse or Remand Administrative Agency Decision and dismissal of the case with prejudice.

In his recommendations, the Magistrate Judge observed that the Court considered the matter ready for resolution, notwithstanding Carpenter's failure to file a reply by the extended deadline. [Doc. 19, p. 1, n.2.]  On July 1, 2011, Carpenter filed timely objections to the recommendations [Doc. 20], and on the same date, he filed an untimely reply brief [Doc. 21].  Carpenter argued that he actually had filed or attempted to file a timely reply brief on May 19, 2011 [Doc. 20, p. 2, n.1], but that there was some unspecified e-mail or clerical error that interfered with the filing of the

1

reply.  The Magistrate Judge appropriately noted that while, most likely, it would have considered the untimely reply had Carpenter promptly alerted the Court of an unsuccessful filing attempt, Carpenter's explanations that he had timely filed the reply were unpersuasive. [Doc. 22, pp. 1-3.]

The reply [Doc. 21], purportedly ready for filing 45 days before Carpenter filed the objections, appears very similar in substance to the objections, both of which track some of the Magistrate Judge's recommendations.  Because Carpenter's two pleadings, the reply and objections, raise almost identical arguments, the Court elects to consider only the objections to have been properly filed.[1]

Carpenter's July 1, 2011 objections [Doc. 20] raised new arguments, and the Magistrate Judge directed the government to file a response to the objections addressing those arguments. [Doc. 22.] On August 2, 2011, the government filed its response to the objections [Doc. 23.]  The Court conducted a *de novo* review of those portions of the Magistrate Judge's recommendations to which Carpenter objects.

### *De Novo* Review of Carpenter's Objections

1. <u>Analysis of SSI Application and Pertinent Time Frame</u>

Carpenter first objects on grounds that the ALJ's decision and the Magistrate Judge's recommendations addressed only his DIB application while failing to consider his concurrent SSI application of April 14, 2006. [Doc. 20, p. 1.] Essentially, Carpenter argues that had the SSI application been considered, the ALJ should have considered medical information for an extended time frame, *i.e,* from April 5, 2005 to August 7, 2008 (the date of the hearing decision) as compared

---

[1]There are no arguments raised in the reply that are not also addressed by the objections.

to the period of April 15, 2005 through December 31, 2006 (the last date Carpenter met the insured status requirements for the DIB application).

Carpenter did not raise this argument in his lengthy opening brief [Doc. 17.] While he briefly mentioned filing applications for SSI and DIB on April 14, 2006, he presented no argument that the relevant period of adjudication for the SSI application was April 5, 2005 to August 7, 2008.  Instead, Carpenter appeared to discuss only one application [Doc. 17, p. 15], and then proceeded to assert that he was "fully insured for Disability Insurance benefits through December 31, 2006, (DLI) . . . ." [Id.] In his opening brief, Carpenter contended that he had to prove that he became disabled on or before December 31, 2006, for purposes of the DIB application, but he did not allege a different relevant period for the SSI application.

In addition, the ALJ's written decision denying benefits states that Carpenter was not entitled to "disability insurance benefits." [AR 51.] Carpenter's subsequent Request for Review of Hearing Officer, signed by Carpenter and his attorney on October 6, 2008, indicates that the request for review related to a disability claim.  The boxes for SSI claims, on this form, were not checked off by social security administration staff. [AR 36.]  Carpenter's attorney's letter to the Appeals Council, dated March 26, 2009, again discusses only an application for disability benefits and amends the onset date of disability to April 5, 2005. [AR 890.]  Carpenter's counsel did not argue to the Appeals Council that the ALJ erroneously failed to consider the SSI application. [AR 890-91.] The only argument as to relevant time frame raised by Carpenter in his opening brief concerned whether the beginning date should run from April 5, 2005, as compared to the government's

assertion of September 17, 2005, the date after Carpenter's prior disability applications were denied.[2]

Therefore, the Court determines that Carpenter waived this issue because Carpenter neither argued that the ALJ erroneously failed to address SSI application nor that the pertinent adjudicatory period was incorrect based on the SSI application, until he filed his objections.  Arguments raised for the first time in a party's objections are deemed waived.  ClearOne Communications v. Biamp Systems, ___ F.3d ___, 2011 WL 3437796, *18 (10th Cir. Aug. 8, 2011) (citing Marshall v. Chater, 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived"), aff'd by ClearOne Communications, Inc. v. Chiang, ___ F.3d ___, 2011 WL 3468215 (10th Cir. Aug 09, 2011)).

Even if the Court determined that this issue was not waived, the Court finds that the ALJ committed no error.  The ALJ's decision clearly states she considered "the record in its entirety." [AR 44.] Moreover, the ALJ discussed the medical records at length, including medical records as early as 1992, 1994, and 1999 [AR 45] through 2008 until the date of the ALJ hearing on February 26, 2008.  The Court, therefore, overrules Carpenter's objections.

2.    Weight Assigned to Treating Physician's Opinion

In his objections, Carpenter states the following:

> In a **post hoc** attempt, the Magistrate Judge attempts to characterize
> the ALJ's opinion that orthopedist Dr. Peter Saltzman was not the
> claimant's treating physician.  (Doc. 19, p 37) This **post hoc** analysis

---

[2]In the government's response to the objections, counsel observes that Carpenter's SSI application was denied on April 14, 2006 because he had excess resources.  Thus, the only application before the ALJ was the DIB application. [Doc. 23, p. 4, n.1.] In so noting, the government relies on a "review of Plaintiff's records." [Id.] The alleged denial of the SSI application based on excess resources apparently is not part of the administrative record, but the denial of the SSI application on some ground is consistent with the fact that the SSI application is rarely mentioned in the voluminous record.

> is inappropriate given the acceptance the ALJ that the Dr. Saltzman
> _was_ the claimant's treating orthopedist physician.  (Tr 44)

[Doc. 20, p. 2] (emphasis in original.)  The Court understands Carpenter's position to be that the
Magistrate Judge misrepresented or contradicted the ALJ's opinion concluding that Dr. Saltzman
was Carpenter's treating physician.  Whatever Carpenter's point, he is mistaken.  The Magistrate
Judge noted, after examining the pertinent factors, that while there was not strong evidence
indicating Saltzman was the treating physician, the Magistrate Judge "assumes Dr. Saltzman was
a treating physician" for purposes of the motion to remand, and treated the doctor's opinion as such.
[Doc. 19, p. 37.]

Carpenter further argues that the Magistrate Judge erred in upholding the Commissioner's
decision by "supplying possible reasons for rejecting the treating physician's opinion."  Carpenter
again is mistaken.  The Magistrate Judge accurately noted that the ALJ did not disregard Dr.
Saltzman's opinions in their entirety or without discussion.  The Magistrate Judge observed that the
ALJ "thoroughly discussed Dr. Saltzman's treatment and examination of Carpenter . . . ." [Doc. 19,
p. 37.]  The Magistrate Judge further provided a detailed explanation as to why the ALJ assigned
less weight to Dr. Saltzman's reports and opinions.  Moreover, the Magistrate Judge noted that the
ALJ properly gave no evidentiary weight to Dr. Saltzman's opinion as to the ultimate issue of
disability.  [Doc. 19, pp. 37-40.]

The Court overrules Carpenter's objections with respect to the weight assigned to the treating
physician's opinions.

### 3.    Development of Record

In his objections, Carpenter cites for the first time Social Security Regulation ("SSR") 96-5p.
[Doc. 20, pp. 2-3.] He contends in part that when the ALJ proceeded to step 5, she was required to

inquire of Dr. Saltzman as to the bases of his medical source opinion that Carpenter was unable to

work.  According to Carpenter, this was especially true since Dr. Saltzman appeared in-person at

the administrative hearing.  Carpenter asserts that the ALJ should have asked Dr. Saltzman about

his assessment of Carpenter's inability to work during the relevant period.  In rejecting Dr.

Saltzman's opinion (as to the ultimate question of disability), Carpenter contends that, at a minium,

the ALJ should have submitted a written inquiry to Dr. Saltzman from February 26, 2008 through

the date of her decision on August 7, 2008, in order to comply with requirements of SSR 96-5p.

That regulation states in pertinent part:

> For treating sources, the rules also require that we make every
> reasonable effort to recontact such sources for clarification when they
> provide opinions on issues reserved to the Commissioner and the
> bases for such opinions are not clear to us.

[Doc. 20, p. 3.]

As stated above, Carpenter raises this argument for the first time in his objections.  The claim

was never raised in Carpenter's motion or brief.  It is, therefore, waived in accordance with Tenth

Circuit authority.  *See, e.g.,* Marshall, 75 F.3d at 1426-27 ("issues raised for the first time in a

party's objections are deemed waived").

Even if not considered waived, the argument is not persuasive.  This is not a case where the

ALJ needed clarification of the treating source's opinions as to ultimate findings of disability.  Final

responsibility for determining the ultimate issue of disability is reserved to the Commissioner.

Castellano v. Sec'y of Health and Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994).  The pertinent

regulations are clear as to this matter.

> The agency "will not give any special significance to the source of an
> opinion on issues reserved to the Commissioner."  20 C.F.R. §
> 404.1527(e)(3); *see* SSR 96-5p, 1996 WL 374183, at *2 (July 2,
> 1996).  Even the opinions of treating physicians "are never entitled

to controlling weight or special significance" on such issues.  SSR
96-5p, 1996 WL 374183, at *2; *see* SSR 96-2p, 1996 WL 374188, at
*2 (July 2, 1996). . .

[Doc. 19, p. 39 (*citing* Lackey v. Barnhart, 127 F. App'x 455, 457-58 (10th Cir. Apr. 5, 2005)

(unpublished)].

The ALJ did not merely reject Dr. Saltzman's opinion out of hand or without additional

discussion, nor did she state Dr. Saltzman's opinion was unclear, ambiguous, or confusing.  She

carefully and thoroughly explained at length why she gave no evidentiary weight to Dr. Saltzman's

opinion in 2006 that Carpenter was "not capable of any realistic form of gainful employment." [AR

48.] For example, the ALJ found that Dr. Saltzman's reports or opinions cited "medical conditions

not verified," and that, instead, they were "contradicted by the record, medical conditions not

supported by objective evidence, and other medical conditions only surmised or assumed."  She

further observed that Dr. Saltzman's  opinion as to the ultimate issue of disability did not "apply a

standard for disability in any way similar to that provided by the SSA and regulations, and it does

not provide any explanation why the vision and other problems taken into account result in work-

related limitations." [AR 48.]

The ALJ further explained why she gave no evidentiary weight to Dr. Saltzman's 2008

disability questionnaire in which he opined that Carpenter showed "extreme psychological

impairments, as well as extreme physical limitations."  The ALJ determined that Dr. Saltzman's

conclusions were not supported by "any clinical findings of record, any treatment history, or any

objective medical evidence." [AR 48.] In addition, the ALJ observed that Dr. Saltzman's 2008

assessments were conclusory and subjective and lacked supporting discussion or explanation.

Moreover, they were contradicted by Carpenter's statements and description of daily activities. [AR

48.]

This is not a situation where the ALJ needed clarification.  Rather, she was clear in describing the reasons she could not accept Dr. Saltzman's opinions as to the ultimate question of disability – a question reserved to the Commissioner.  Indeed, in at least one Tenth Circuit opinion, the Court described such doctor's statements as "unhelpful."  *See* Balthrop v. Barnhart, 116 F. App'x 929, 932 (10th Cir. Nov. 24, 2004) (unpublished) (treating doctor's opinion that claimant was "totally disabled" and incapable of gainful employment extended beyond the expertise of a physician, since it required an assessment of interrelated medical, educational, and vocational factors).  *Compare* Andersen v. Astrue, 319 F. App'x 712, 728 (10th Cir. Apr. 3, 2009) (unpublished) (duty to re-contact physician arises where "the sole reason provided for disregarding the opinion [was] its confusing nature").

The ALJ properly developed the record and was not required to re-contact Dr. Saltzman to inquire into the bases for his opinion as to the ultimate issue of disability.  Here, the ALJ's duty to "fully and fairly develop[] the record as to material issues" was satisfied.  *See* Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (discussing requirements to develop the record).  The Court overrules Carpenter's objections with respect to SSR 96-5p requirements.

> 4.   Pain and Credibility Determination

Carpenter argues that the Magistrate Judge erred in affirming the ALJ's pain and credibility determination and that the ALJ's determination was contrary to the requirements set forth in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987) and SSR 96-7p. [Doc. 20, pp. 3-5.] The Court disagrees and overrules the objections, concluding that substantial evidence supports the ALJ's pain and credibility findings and that the ALJ complied with the pertinent legal standards.

At one point in the ALJ's comprehensive written analysis, the ALJ stated:

> Although [Carpenter] alleges constant and severe pain, he is not prescribed pain medication, and while he and his doctor state he has been provided sample quantities of pain medication, his visits to this doctor are too infrequent to suggest that pain has resulted in any difficulties for the claimant, either physically or in mental functioning.

[AR 44-45.] The ALJ also discussed a 2003 doctor's note, recording Carpenter's complaints of neck pain and the related examination indicating good range of motion. While the doctor recommended Carpenter see Dr. Saltzman for neck pain and suggested a subacromial injection to the right shoulder might be helpful, the record shows no treatment or pain medication for cervical pain. [AR 47.] The ALJ further observed that the record indicated no treatment records from any treatment provider showing a referral for pain management or prescriptions for pain medication on a regular and continuing basis. [AR 47.]

With respect to Carpenter's own description of pain, he testified that he drove every day but had suffered from constant pain in both shoulders, neck pain, and headaches. He experienced frequent pain in his lower back. All of these complaints were noted by the ALJ who explained why she afforded his testimony only partial credibility. The ALJ's reasons included a lack of objective medical evidence and the fact that his need for medical care was far less than what would reasonably be expected for an individual having the degree and extent of medical problems alleged. Carpenter required very little pain medication and was treated minimally and conservatively. His testimony was inconsistent with his demeanor, both past and present, his prior statements, his daily activities, and the record as a whole. The ALJ further noted that Carpenter stated in 2006 that he could handle household chores, laundry and shopping. His attention span was normal, and he built models every day for a few hours. Finally, the ALJ described medical records indicating that while Carpenter

sustained some significant injuries and underwent surgeries, he recovered quite well.  [AR 49-50.] "[M]any pages of treatment records indicate excellent range of motion."

An ALJ is allowed to discuss a claimant's demeanor, symptoms, attempts to obtain treatment, medications, effectiveness of treatment, objective medical findings, daily activities, and the consistency of the allegations with the record as a whole.  *See* Grotendorst v. Astrue. 370 F. App'x 879, 884 (10th Cir. Mar. 22, 2010) (unpublished) (listing factors to consider in assessing credibility of complaints of pain); Huston v. Bowen, 838 F.2d 1125, 1131-32 (10TH Cir. 1988) (listing possible factors to consider).  Here, the ALJ properly considered many, if not all, of the listed factors in finding Carpenter partially credible.

In Harper v. Astrue, ___, F.3d ___,  2011 WL 2580336, at **4-5 (10th Cir. June 30, 2011), the Tenth Circuit rejected a similar argument that the ALJ erred by not specifically discussing Luna. The claimant, in Harper, alleged pain as a result of fibromyalgia.  As to the issue of credibility, the claimant argued that the ALJ did not expressly mention Luna or expressly discuss the three Luna factors.  Instead, the ALJ discussed how often the claimant sought treatment for her condition or complaints, her use or medications and lack of side effects, and her ability to work part-time at a church.  The Tenth Circuit found this credibility analysis was sufficient.

In his objections, Carpenter argues his complaints were supported by objective medical evidence.  He claims that the Magistrate Judge ignored the objective medical evidence and instead, relied on "remote irrelevant evidence." [Doc. 20, p. 5.] Carpenter states that "[b]etween January 2005, and continuing through January 2008, the objective evidence showed the following: . . . ." [Doc. 20, p. 4.]  At this point, Carpenter provides a chart summarizing x-rays taken in late January 2005, when Carpenter was involved in a motorcycle accident [AR 548, 552, 553, 659, 662], and then

10

three x-rays taken three years later in January 2008, as described by Dr. Saltzman in a 2008 medical record [AR 24]. [Doc. 20, pp. 4-5.]

It is true that Carpenter suffered multiple fractures in a motorcycle accident in early 2005. [AR 340-349, 517-24; duplicate records at 656-662.] However, Carpenter only relies on records near the date of the accident and the surgery to repair the fractures, and makes no mention of the records that describe his successful, post-surgery recovery. For example, several months after surgery, Dr. Garard's records indicate that Carpenter was doing well. He had full extension and 130 degrees knee flexion; no tenderness with palpation; full pronation, supination and ROM of the left elbow; and was "a little bit tender at the distal ridge of the LCDC plate." His right elbow had 100 degrees flexion and lacked about 45 degrees full extension. The overall alignment of his right elbow, left forearm and right knee were "excellent." [AR 335.]

The Court rejects Carpenter's claim that discussing these records amounts to *"post hoc"* rationalization by the Court. The ALJ discussed the post-surgical medical records that indicated Carpenter's thoracic and lumbar spine were non-tender and that Dr. Garard's records made no reference to cervical spine or cervical pain. "Dr. Garard provides no indication that the claimant suffered from any abnormality – or any pain – in the cervical spine." [AR 47.] The ALJ also noted that Dr. Garard repaired the fractures and that there was "no suggestion of post-operative abnormalities." His overall alignment of the fractured bones was excellent. [AR 48.]

Notably, the next records listed in Carpenter's chart [Doc. 20, p.5] are from 2008, three years after the 2005 accident. It may well be that Carpenter emphasizes only the single 2008 medical record because there was so very little medical treatment or evaluation between 2005 and 2008. He was seen by Dr. Saltzman once in 2006, once in 2007, and once in 2008. A lack of regular and consistent medical treatment contradicts a claimant's subjective allegations of an inability to work.

11

*See* Matthews v. Astrue, 231 F. App'x 804, 807-08 (10th Cir. May 3, 2007) ("factors to be considered by ALJ in assessing credibility include extensiveness of attempts to obtain relief and frequency of medical contacts") (unpublished) (*citing* Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)).

Carpenter identifies 2008 "x-rays" of his cervical spine, right knee, and right elbow, but there are no actual x-rays in 2008 that are part of the administrative record.  Instead, Carpenter refers only to Dr. Saltzman's 2008 report, in which the doctor discusses x-rays taken in 2008 and findings.  Yet, the actual x-rays and interpretations of x-rays are not in the administrative record.  Moreover, while Carpenter sets forth Dr. Saltzman's interpretations of x-rays in 2008, the descriptions of the x-rays do not specify that Carpenter suffered from pain. [Doc. 20, p. 5; AR 24.]  Rather, Carpenter described subjective complaints of pain to Dr. Saltzman on January 31, 2008. [AR 22.]  On examination, Dr. Saltzman observed some tenderness and some mild muscle spasms, and pain on compression of the right patella.  He further noted increased pain on extension of the knee. [AR 23.]  Ultimately, Dr. Saltzman recommended conservative treatment, including neck and back range of motion stretching and strengthening exercises, as well as removal of plates and screws in his left forearm.  If Carpenter's neck pain continued, he was to obtain an MRI of his cervical spine.  It is unknown if Carpenter obtained that MRI.

The Court determines that the ALJ linked her credibility determination to substantial evidence as required by Kepler  v. Chater, 68 F.3d 387, 391 (10th Cir.1995) and that she provided specific reasons for her credibility determination in accordance with Hardman v. Barnhart, 362 F.3d 676, 678 (10th Cir. 2004).  Indeed, this is not a case where the ALJ merely recited a boilerplate paragraph listing the Luna factors as is frequently seen in opinions.  Instead, here, the ALJ explained why the specific evidence relevant to each factor led her to conclude Carpenter's subjective

12

complaints were only partially credible.  Moreover, the Court sees no indication that the ALJ misread the medical evidence as a whole.  Thus, her determination as to Carpenter's credibility is entitled to deference.  *See, e.g.,* Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990) (ALJ's credibility determination generally treated as binding on review).

The Court, therefore, overrules the objections as to requirements of Luna and SSR 96-7p.

The Court agrees with the Magistrate Judge's analysis and recommended disposition that Carpenter's motion to remand or reverse be denied and that this case be dismissed with prejudice.

IT IS HEREBY ORDERED that the analysis and recommended disposition of the United States Magistrate Judge are adopted by the Court.

IT IS FURTHER ORDERED that Plaintiff John Carpenter's Motion to Reverse or Remand Administrative Agency Decision is DENIED and that the action be, and hereby is, DISMISSED with prejudice.

_____
UNITED STATES DISTRICT COURT

13